In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2288

CYNTHIA BERRY,

*Plaintiff-Appellant,*

*v.*

CHICAGO TRANSIT AUTHORITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3640—**Suzanne B. Conlon**, *Judge*.

ARGUED APRIL 6, 2010—DECIDED AUGUST 23, 2010

Before KANNE, ROVNER, and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Cynthia Berry filed suit against her employer, the Chicago Transit Authority ("CTA"), claiming that it discriminated against her because of her sex and subjected her to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e *et seq*. The district court granted summary judgment in favor of the CTA, and Berry appeals. We affirm in part and reverse in part.

The CTA hired Berry as a carpenter in 2002. She worked alongside other carpenters, electricians, mechanics, and welders in the bus overhaul section of Area 315 at the CTA's South Shops facility. In January 2006—when the incident that precipitated this lawsuit occurred—Berry was one of only two women among approximately 50 employees in Area 315, and the only woman among approximately 15 carpenters there.

Berry and other workers in Area 315—including Philip Carmichael, an electrician, and Earl Marshall, a mechanic—often played cards during breaks. During her morning break on January 17 or 18, 2006, Berry went to the break area and sat on a bench at a picnic-style table with Marshall and two other employees, John Hill and Raymond Hardy. Carmichael followed Berry into the break area. Marshall wanted to play cards with Carmichael as his partner, against Hill and Hardy; he ordered Berry to get up from the table. Berry, offended by Marshall's commanding tone, remained seated. According to Berry, Carmichael sat down and straddled the bench so that he was facing Hardy, with his back close to Berry.

Marshall suggested that the four men move to the other end of the table; he, Hill, and Hardy did so. Berry says Carmichael remained where he was seated and began rubbing his back against her shoulder. She jumped up, told him not to rub himself against her, and sat down next to Hardy at the other end of the table. At this point, Berry says, Marshall began telling her to get up from the table again. Not wanting Marshall to think he could

order her around, she remained seated, but began rubbing her temples to compose herself. According to Berry, she next felt Carmichael grabbing her breasts and lifting her up from the bench. Holding her in the air, he rubbed her buttocks against the front of his body—from his chest to his penis—three times before bringing her to the ground with force. Berry landed off-balance, with only one leg on the ground, and says Carmichael then pushed her into a fence. Upset and wanting to avoid any men, she lay down in a bus for the rest of her shift.

The next day, Berry told Michael Gorman—a manager at the South Shops facility, and one of her supervisors—how she had been sexually harassed the previous day. According to Berry, Gorman responded by telling her that she was "a pain in the butt" and that she could lose her job if she filed charges against Carmichael. Nonetheless, Gorman called Thelma Crigler, a CTA equal employment opportunity investigator, and asked her to investigate the incident. Crigler told Gorman she would not be able to conduct an investigation until the following week, and she asked him to collect statements about what happened from Berry, Carmichael, Marshall, Hill, and Hardy. After Berry wrote her statement and gave it to Gorman, he told her that the other employees had said that she sat in Carmichael's lap. Berry denied that, and says Gorman responded by telling her he didn't care what had happened, and that "he was going to do whatever it takes to protect CTA."

Berry also called the police to the South Shops facility on the day after the incident, telling them that Carmichael

had attacked her. The police spoke with Berry, Carmichael, and Gorman, and determined that Berry had been the aggressor. Later that day, before Berry took her lunch break, Gorman told her to stay away from the break area pending Crigler's investigation. Gorman did not tell Carmichael or the other employees who saw the incident to stay away from the break area, although he did tell Carmichael to stay away from Berry. According to Berry, when she asked if Gorman had told the men involved not to go to the break area, Gorman replied, "Women aren't the only ones who can file sexual harassment."

Crigler's investigation ultimately reached a conclusion similar to that of the police: After reviewing the statements given to Gorman and interviewing Berry, Carmichael, and other employees, Crigler found no substantial evidence that Berry had been sexually harassed. Instead, Crigler determined that Berry had been the aggressor, sitting between Carmichael's legs; Carmichael picked her up—by the waist, he said—to move her out of his way. Berry contends that Gorman sabotaged Crigler's investigation to prevent her harassers from being punished and to make it appear as if she made false accusations of sexual harassment.

Because of lower-back pain and headaches that she says were caused by Carmichael's actions, Berry went on short-term disability leave soon after the incident in the break area. She sought injured-on-duty status, which would have entitled her to workers' compensation, but was instead placed on sick leave, which meant that she

received pay only through June 2006. (Berry never returned to work from sick leave, and her lawyer informed us at argument that she is no longer employed by the CTA.) She maintains that Gorman refused to put her on injured-on-duty status and ordered instead that she be placed on sick leave.

Berry brought this lawsuit against the CTA in July 2006, claiming that Carmichael's actions and Gorman's response created a hostile work environment and constituted sex discrimination. (Her suit also included state-law claims of battery and intentional infliction of emotional distress against Carmichael and Marshall; those claims have been settled and are not part of this appeal.) At the close of discovery, the CTA moved for summary judgment. Although the district court found Carmichael's actions sufficient to establish a hostile work environment, it concluded that the CTA could not be found liable because it took prompt and reasonable steps to discover and rectify the sexual harassment. The court also reasoned that Berry could not prove sex discrimination because she could not establish that she had suffered an adverse employment action. And the court rejected—on the basis of insufficient evidence—a retaliation claim that Berry raised in her response to the CTA's motion for summary judgment. The court therefore granted the CTA's motion for summary judgment, a decision we review de novo. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 475 (7th Cir. 2010).

Summary judgment, of course, should be granted when the admissible evidence, construed in favor of the non-

movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c)(2); *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). If there is sufficient evidence for a jury to return a verdict for the non-moving party, a genuine issue of material fact exists. *See Swearnigen-El*, 602 F.3d at 859. It is worth pointing out here that we long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is "self-serving." *See Payne v. Pauley*, 337 F.3d 767, 770-73 (7th Cir. 2003). If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts. *See id.*; *see also, e.g., Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010); *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 505 (7th Cir. 2010).

With those principles in mind, we turn to Berry's appeal, beginning with her claim of a hostile work environment. For her claim to survive summary judgment, Berry must be able to show that she was subjected to unwelcome conduct because of her sex; that the conduct was so severe or pervasive that it created a hostile or abusive working environment; and that there was a basis for the CTA's liability. *See Turner v. Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010); *Scruggs v. Garst Seed Co.*, 587

F.3d 832, 840 (7th Cir. 2009); *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731 (7th Cir. 2009). The unwelcome conduct can be sexist—demonstrating animus toward women—or sexual. *Scruggs*, 587 F.3d at 840. It must be both subjectively and objectively severe or pervasive. *Turner*, 595 F.3d at 685.

Berry argues that she experienced a hostile work environment in two ways: first when Carmichael grabbed her breasts, lifted her, and rubbed her body against his, and again when Gorman made comments to Berry dismissive of her charges. We consider Gorman's actions first, because he was Berry's supervisor and had managerial authority; if his conduct created a hostile environment, the CTA can be held strictly liable. *See Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009); *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). The district court concluded that Berry had not produced evidence to permit a jury to conclude that Gorman's conduct created a hostile work environment.

At the outset, we note that the district court improperly discounted as uncorroborated Berry's assertion that Gorman made dismissive comments such as, "Women aren't the only ones who can file sexual harassment." As we have reiterated, Berry did not need to provide corroboration of her firsthand observation of Gorman's statement; her version of Gorman's words and actions is based on her own personal encounters with him and therefore can be used to create issues of material fact. *See Payne*, 337 F.3d at 773. Nevertheless, Berry's claim as it relates to Gorman must fail substan-

tively because she has not shown that his comments were severe or pervasive enough to create a hostile environment. We evaluate such comments using a variety of factors, including their frequency and severity, whether they were physically threatening or humiliating, and whether they unreasonably interfered with an employee's performance. *See Turner*, 595 F.3d at 685. Berry has not offered evidence that Gorman made similar comments frequently or on any other occasions. *See Lucero*, 566 F.3d at 732. She does not suggest that she felt physically threatened or humiliated by his comments. Nor does she say that the comments affected her performance; to the contrary, she continued coming to work, and says she later stopped working because of her injuries, not because of what Gorman said.

With respect to Carmichael's actions, however, Berry has provided enough evidence to allow her hostile work environment claim to go forward. As the district court noted, a single act can create a hostile environment if it is severe enough, *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000), and instances of uninvited physical contact with intimate parts of the body are among the most severe types of sexual harassment, *see Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006); *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). Carmichael's actions, as alleged by Berry, qualify undeniably as unwelcome sexual conduct that established a hostile environment.

The district court erred when it concluded that Berry had not offered evidence of the CTA's liability for Carmichael's actions. Because Berry claims that Carmichael, a co-worker, created a hostile work environment, she must show that the CTA was negligent in discovering or rectifying the harassment; if the CTA took prompt action that was reasonably likely to prevent a reoccurrence, it cannot be liable. *See Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009). The district court reasoned that Gorman, as Berry's supervisor, was not negligent because he promptly contacted Crigler to investigate the incident, and he advised Berry and Carmichael to stay away from each other to reduce tension. But the court once again mistakenly disregarded Berry's contrary testimony merely because it was uncorroborated. She contends that, far from facilitating a genuine investigation into Carmichael's conduct, Gorman sabotaged the investigation. Gorman's eagerness to disregard the truth, she asserts, is reflected in his assurance that he didn't care what really happened because Berry was "a pain in the butt," his prediction that she would lose her job if she filed charges, and his promise that he was going to do "whatever it takes to protect CTA." Berry's testimony, and the inferences we must draw in her favor at this stage, *see Scruggs*, 587 F.3d at 838, would allow a reasonable factfinder to conclude that Gorman, acting as a manager, maliciously thwarted any legitimate investigation, and that the CTA was therefore negligent or worse in responding to her report of harassment. Granting summary judgment on Berry's claim of a hostile work environment—as it re-

lated to Carmichael's actions and the CTA's liability—was thus improper.

Summary judgment was proper on Berry's discrimination claim, however, because she has not produced evidence of an adverse employment action. *See Everroad*, 604 F.3d at 477; *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Berry contends that Gorman made sure she was not placed on injured-on-duty status, which would have entitled her to workers' compensation. But she offers no admissible evidence to back up that assertion. In this instance, Berry's unsupported allegations are only speculative and conclusory, and therefore cannot withstand summary judgment. *See Everroad*, 604 F.3d at 480 n.4; *Payne*, 337 F.3d at 772-73.

Finally, Berry forfeited her claim of retaliation. At argument, her attorney conceded that her complaint did not include a retaliation claim, but maintained that she had preserved the claim by raising it in her response to the CTA's motion for summary judgment. That was incorrect; a plaintiff may not use her brief opposing summary judgment to introduce claims not stated in her complaint—at least not without a defendant's consent, which the CTA did not offer. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 n.15 (7th Cir. 2006); *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663-64 (7th Cir. 1998); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

Accordingly, we AFFIRM the judgment of the district court regarding Berry's discrimination and retaliation claims, but REVERSE the court's judgment regarding

Berry's claim of a hostile work environment and REMAND for further proceedings.