NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 17, 2011[*]
Decided August 31, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1791

| | |
|---|---|
| ANTHONY PALERMO, | Appeal from the United States District |
|     *Plaintiff-Appellant.* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 10 C 2050 |
| HILLARY RODHAM CLINTON, | |
| Secretary of State, | Samuel Der-Yeghiayan, |
|     *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Anthony Palermo sued his employer, the U.S. Department of State, for race discrimination, gender discrimination, and retaliation. The district court granted summary judgment to the Department of State, and Palermo appeals. We affirm because Palermo's evidence does not support a prima facie case of discrimination or retaliation.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

Palermo, a white male, has worked for the State Department in the Chicago Regional Passport Office since 1995. During this time, he has filed eight or nine complaints of discrimination. Brittany Williams, an African-American female, was Palermo's supervisor from 2005 until 2009. In 2007 Williams nominated Palermo for a discretionary performance bonus. The awards committee asked Williams' supervisor Terry Green to reevaluate Palermo and resubmit the nomination. Green submitted the nomination for Palermo after the deadline, and Palermo did not receive the bonus.

In 2008 Williams rated Palermo's overall performance as "exceeds expectations" in his performance evaluation, and she nominated Palermo for a performance bonus, which he received. Despite the positive rating, Palermo took issue with some of Williams' comments in his evaluation and refused to sign it. He argued that the following statement was inflammatory:

> In completing assigned tasks, there have been occasions when Mr. Palermo focused more closely on what he perceived to be his colleagues' lack of interest and/or input rather than his own assigned responsibility for the task, expending valuable time on non-productive exchanges which did not contribute to the completion of the project. Since it appears that on [at] least two occasions this may have occurred due to a lack of clarity regarding responsibility for the project, it might be beneficial on future assignments for him to engage in more dialogue up front to clarify expectations. There were other times when the task could have been completed independently, that he was insistent input from others was required. When assigned to draft the EAP, for example, his response to follow up questions regarding his progress on the assignment often focused on the fact that feedback had not been received from night shift management as had previously been received from the day shift team. He did not appear to grasp that input from either team was neither required nor necessary to complete the assignment.

Williams explained that she intended the comments to be constructive, and that she used similar language with other employees to highlight areas for improvement. Palermo believed the comments were inaccurate, discriminatory (based on race and gender), and retaliatory for complaints of discrimination he had filed in the past. Williams agreed to modify the language to make it more acceptable to Palermo, which Palermo viewed as an acknowledgment by Williams that the language was improper. The parties dispute whether Palermo or Williams was responsible for revising the language, but agree that the changes were never made and that Palermo never received a revised performance evaluation.

In 2010 Palermo sued the State Department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), for discrimination and retaliation. He based both

claims on the denial of the discretionary bonus in 2007, the somewhat unfavorable comments in his 2008 performance evaluation, and Williams' failure to give him a revised copy of the 2008 performance evaluation, without which, he claimed, he could not apply for other jobs with the federal government. Palermo also maintained that all other members of his management team received bonuses in 2007.

The district court granted summary judgment to the State Department, finding that Palermo could not establish a prima facie case of discrimination or retaliation because he did not show he had he suffered an adverse employment action or that he was treated less favorably than other similarly situated employees. Although Palermo pursued both claims under only the indirect method of proof, the court also noted that he had not offered any direct evidence of discrimination or retaliation and could not succeed under the direct method of proof. Finally, the court found that Palermo had not demonstrated that the defendant's stated reasons for the supposed adverse actions were pretexts.

On appeal, Palermo argues that the district court erred in finding that he did not make out a prima facie case of discrimination or retaliation under the indirect method of proof. We review the district court's decision to grant summary judgment de novo, construing all evidence in Palermo's favor. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). To establish a prima facie case of discrimination or retaliation under the indirect method of proof, Palermo must show, among other things, that he suffered an adverse employment action and that his employer treated similarly situated employees outside of his protected group more favorably. See *Silverman v. Board of Education of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011) (retaliation); *Montgomery*, 626 F.3d at 394 (discrimination).

Palermo maintains that he suffered two adverse actions. First he points to comments in his 2008 performance review that, he says, characterize him as unproductive and unable to contribute to the completion of projects. He argues that these comments could negatively affect his ability to change jobs or advance his career.

The district court did not err in finding that Palermo's performance evaluation was not an adverse employment action, as required to establish a prima facie case of discrimination under Title VII. To show an adverse employment action for his discrimination claim, Palermo must identify a "quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). A negative performance evaluation alone is not an adverse employment action for a discrimination claim because it does not necessarily change the terms or conditions of employment. See *De la Rama v. Illinois Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008); *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001). Palermo does not contend that the performance evaluation

led to a reduction in pay, a loss of job responsibilities, or any other change in the terms of his employment.

For retaliation claims, the definition of adverse action is broader, but even so, we agree with the district court that Palermo's performance evaluation is insufficient to support a claim of retaliation. Title VII's retaliation provision forbids any materially adverse action that would dissuade a reasonable employee from making a charge of discrimination even if the action does not affect the terms or conditions of employment. See *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006)*; Henry v. Milwaukee County*, 539 F.3d 573, 586-87 (7th Cir. 2008); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007). We have recognized that negative evaluations can, at least in theory, amount to adverse actions sufficient to support a retaliation claim. See *Silverman*, 637 F.3d at 741 (affirming summary judgment for employer). In some circumstances, even faintly positive evaluations could do so, at least if the expectation in the organization or based on the employee's track record is that fair evaluations will be very positive.[1] At the same time, an employee who complains of discrimination is not immune from the normal slights and disappointments that most employees experience. See *Burlington Northern*, 548 U.S. at 68. The record in this case shows at most a few mild comments with constructive criticism in an otherwise positive performance evaluation. Those comments are not sufficient to dissuade a reasonable employee from filing a discrimination claim. See *Metzger v. Illinois State Police*, 519 F.3d 677, 683 (7th Cir. 2008) (affirming summary judgment for employer; supervisor's description of plaintiff's view of her own job duties as "grandiose" was not adverse action).

The second adverse action that Palermo identifies is being passed over for a bonus in 2007. But Palermo concedes that the performance bonus was discretionary. For a discrimination claim, the loss of a discretionary bonus is not an adverse employment action because it does not change the terms or conditions of employment. See *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). The denial of one discretionary bonus (Palermo admitted he received bonuses all other years, both before and after 2007) is also not sufficient to dissuade

---

[1]The ability to harm a reputation with faint praise has long been recognized, to the point of becoming a cliche:

> Damn with faint praise, assent with civil leer,
> And without sneering teach the rest to sneer;
> Willing to wound, and yet afraid to strike,
> Just hint a fault, and hesitate dislike.

Alexander Pope, Epistle to Dr. Arbuthnot (1735).

a reasonable employee from engaging in protected activity and therefore cannot support his retaliation claim. See *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008); *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996).

Summary judgment is appropriate if a party cannot demonstrate any one element of a prima facie case, see *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007), so the district court properly granted summary judgment to defendants based on Palermo's failure to identify an adverse employment action. We note for completeness that the district court also properly found that Palermo failed to establish another prong of the prima facie case for discrimination and retaliation – that he was treated less favorably than similarly situated employees outside his protected group. See *Silverman*, 637 F.3d at 742; *Montgomery*, 626 F.3d at 394. Palermo's uncorroborated and conclusory statements that he was treated differently than other employees are insufficient to survive summary judgment on his Title VII claims. See *Oest*, 240 F.3d at 614-15.

We AFFIRM the judgment of the district court.