In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1300

ERIC HUANG,

*Plaintiff-Appellant*,

*v.*

CONTINENTAL CASUALTY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 1049 — **George W. Lindberg**, *Judge.*

ARGUED DECEMBER 6, 2012 — DECIDED JUNE 13, 2014

Before FLAUM, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Eric Huang, a former systems and software engineer, appeals the grant of summary judgment against him in this employment-discrimination action. He principally asserts that, by firing him, Continental Casualty Company discriminated against him because he is Chinese and retaliated against him for complaining about workplace issues. (The parties refer to Continental as "CNA," Continental's

parent corporation; for consistency, we follow their convention in this opinion.) Because the undisputed evidence shows that Continental lawfully fired Huang because he refused to accept legitimate work assignments, we affirm the district court's judgment.

The events that precipitated this lawsuit largely began in 2007. At that time, Huang had been working for CNA, a provider of commercial insurance products, for eight years. In March, Huang's supervisor transferred him to a new, four-member team with different job duties. CNA required every member of Huang's four-person team to be on "pager duty" every fourth weekend. Pager duty entailed carrying a pager at home and being available to respond to it 24 hours a day throughout the assigned weekend.

Beginning in August 2007, Huang repeatedly refused to work the weekend hours that CNA assigned him for pager duty, citing family obligations. He persisted in his refusal even after his supervisor and human resources reminded him that pager duty is a work requirement, equally shared by all team members, and told him that CNA could fire him for refusing it. Huang offered to work from the office on Sundays in exchange for having Mondays off but refused to carry a pager and remain on call while at home during the weekends.

Around this time, Huang made a workplace complaint. Huang's supervisor had told him, for reasons unrelated to his refusal to comply with pager duty, that Huang was "pissing [him] off." In response, Huang emailed the human resources department to complain about the comment. (Two years earlier, Huang had also complained to human resources about

another supervisor's "favoritism" toward some co-workers, but the nature of the complaint is not in the record.)

In December 2007, four months after first refusing to comply with the on-call directive, Huang's supervisor and a human resources agent met with him and gave him one final opportunity to commit to a weekend, work-from-home schedule. They again warned him that CNA would fire him if he did not comply with the weekend-hours job requirement. When he again refused, CNA followed through and discharged him.

In compliance with CNA's practice following termination of employment, its human resources agent asked Huang for a list of his belongings so that someone could retrieve them from his desk. When Huang refused to provide the list and demanded to be let back to his work station, human resources called a security guard. Police officers eventually escorted Huang out of the building and arrested him, although CNA did not press charges.

After pursuing his administrative remedies, Huang filed this suit. Only two of his claims are relevant to this appeal. First, he contends that the company discriminated against him based on his race and national origin by firing him, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. Second, he argues that by firing him and having him arrested, CNA unlawfully retaliated against him for his earlier complaints about supervisors. He relies only on the indirect method of proving these claims.

The district court granted CNA's motion for summary judgment. The court determined that, because he ignored

pager duty, Huang did not provide evidence that he had met the company's legitimate job expectations. In reaching this conclusion, the court rejected Huang's argument that, because the pager-duty requirement was not included in his job description, it was not a legitimate requirement. The district court also distinguished two employees that Huang cited as similarly situated, explaining that neither refused to work from home on weekends. Finally, Huang's retaliation claims failed, the court reasoned, because he did not supply evidence that he had engaged in the protected activity of complaining about unlawful discrimination.

We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to Huang and construing all reasonable inferences from the evidence in his favor. *See, e.g.*, *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). Both Title VII and § 1981 forbid an employer from firing an employee on account of his race or national origin, 42 U.S.C. § 2000e-2 (Title VII); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 849–50 (7th Cir. 2008) (§ 1981), and retaliating against an employee who protests unlawful employment discrimination, 42 U.S.C. § 2000e-3(a) (Title VII); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (§ 1981).

We begin our analysis with Huang's discrimination claim. On appeal, Huang argues that he supplied evidence of a prima facie case of race discrimination under the indirect method. To establish a prima facie case of discrimination under either Title VII or § 1981, Huang needed to provide evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered

an adverse employment action; and (4) other similarly-situated, non-Chinese (or non-Asian) employees were treated more favorably. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389, 394 (7th Cir. 2010); *Hobbs v. City of Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 n.4 (7th Cir.2009). If he fails to provide evidence of any one of these factors, his claim fails. *Montgomery*, 626 F.3d at 394.

Only the second and fourth elements of the prima facie case are at issue on appeal, but because Huang contends that CNA enforced its job expectations unequally, these two elements merge. *See Peele v. County Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). Huang contends that for three reasons he presented sufficient evidence that he met CNA's legitimate expectations. First, he contends that he offered the company a suitable alternative to the weekend pager-duty requirement by proposing to come into work on Sundays instead of Mondays. Second, he argues that he had good reason for refusing pager-duty: he wanted more time with his family. Third, he maintains that pager duty was not legitimate because it was not written in his job description.

All three of Huang's arguments are meritless. First, employers are entitled to determine their scheduling needs, *see Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999), and decide whether employees are satisfying them, *see Collins v. American Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013); *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010). Huang's offer to work Sundays could not satisfy CNA's needs because the company needed him on call throughout all of Sunday *and* Saturday, and he refused to

comply. Second, although a longing to spend more time with family is understandable, it does not undermine the legitimacy of a work schedule that cuts into family time. *Grube v. Lau Indus. Inc.*, 257 F.3d 723, 729 (7th Cir. 2001). Nor does Huang's preference for home life invalidate CNA's conclusion that Huang did not meet the company's work expectations. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1091–92 (7th Cir. 2000). Finally, CNA need not have memorialized its pager duty in a job description to make it a valid employment expectation. *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008) (explaining that "[d]etermining what falls within the scope of an employee's duties is a practical exercise that focuses on the duties an employee actually is expected to perform" because "[f]ormal job descriptions often bear little resemblance to" those duties) (internal quotation marks and citation omitted).

Huang also provides no evidence that CNA treated other similarly situated non-Chinese workers more favorably. To survive summary judgment, Huang needed to identify another employee, outside of his protected class, who refused a comparable work assignment but was not fired. *Montgomery*, 626 F.3d at 395; *Hanners v. Trent*, 674 F.3d 683, 692–93 (7th Cir. 2012). He has not. In the district court, he compared himself to two other employees. One is a worker whom CNA permitted to arrive and leave two hours early on some weekdays; the other asked to work from home and was not fired for asking. But Huang presented no evidence that either of these two employees repeatedly refused, as Huang did, a company order to remain on-call once every four weekends, so they are not similarly situated. Without evidence of a comparably insubor-

dinate co-worker, Huang failed to show a prima facie case of discrimination.

Despite failing to establish a prima facie case, Huang maintains on appeal that CNA's proffered reason for firing him—his refusal to accept weekend on-call assignments—was pretextual. But because Huang has not satisfied his prima facie case, an argument about pretext does not even arise. *See Montgomery*, 626 F.3d at 394. In any case, Huang's pretext argument just recycles his already rejected contention that the on-call requirement was illegitimate and unequally applied. Thus, for the same reasons that we rejected the prima facie case, the pretext argument also fails. *Collins*, 715 F.3d at 1000; *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008).

Finally, Huang argues that he provided evidence that CNA retaliated against him by firing him and having him arrested. But to survive summary judgment on this claim, he needed to present evidence that he made a complaint about unlawful discrimination. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Though he did complain about workplace issues twice (an unelaborated protest about "favoritism" and an objection to his supervisor saying that Huang was "pissing [him] off"), Huang provided no evidence that these two complaints were about unlawful discrimination. *See id.*; *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000). Without evidence that Huang engaged in protected conduct, the retaliation claim fails. *Id.*

Accordingly, we AFFIRM the judgment of the district court.