4 F.3d 984
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerry G. COFFEY, Plaintiff-Appellant,
v.
CHEMICAL SPECIALTIES, INCORPORATED, Defendant-Appellee,
and
WOOD TREATING EQUIPMENT COMPANY, INCORPORATED, Defendant,
v.
PENNWALT CORPORATION; Tennessee Chemical Company; Diamond
Shamrock Refining Marketing Company; Occidental Chemical
Corporation; Atochem North America, Incorporated, Third
Party Defendants.
 No. 92-2397.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1993.
Decided: August 20, 1993.
 
 1
 Appeal from the United States District Court for the District of South Carolina, at Orangeburg. Dennis W. Shedd, District Judge. (CA-88-479-6)
 
 
 2
 Argued: Kenneth Michael Suggs, Suggs & Kelly, Lawyers, P.A., Columbia, South Carolina, for Appellant.
 
 
 3
 Timothy William Bouch, Young, Clement, Rivers & Tisdale, Charleston, South Carolina, for Appellee.
 
 
 4
 On Brief: Stephen P. Groves, H. Michael Bowers, Young, Clement, Rivers & Tisdale, Charleston, South Carolina, for Appellee.
 
 
 5
 D.S.C.
 
 
 6
 AFFIRMED.
 
 
 7
 Before HALL and WILKINS, Circuit Judges, and KISER, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 
 OPINION
 KISER, Chief District Judge:
 I.
 
 8
 Jerry Coffey appeals the lower court's order granting summary judgment in favor of Chemical Specialties Inc. (CSI). Finding no error with the lower court's decision, we affirm.
 
 II.
 
 9
 From 1981 through 1986, the plaintiff/appellant, Jerry Coffey, was employed as a plant manager by Holly Hill Forest Industries Inc. (Holly Hill), a pressurized wood treating company. Holly Hill's wood treating process involved the use of a pressurized container to treat lumber with a wood preservative known as Chromated Copper Arsenate (CCA), which is a mixture of copper sulfate, sodium bichromate and arsenic acid. In March 1982, Holly Hill began purchasing a 50% concentration of CCA from the defendant/appellee, CSI. In July 1982, Holly Hill decided to mix its own CCA compound and started purchasing the aforementioned chemicals directly from CSI. CSI generally shipped the chemicals by tanker truck to Holly Hill and only rarely shipped the chemicals in bags by trailer truck.
 
 
 10
 From 1982 through 1986, Coffey was actively involved in mixing the constituent chemicals to form the CCA compound. His duties included mixing the appropriate proportion of chemicals with water and cleaning (crapping out) the tank after the CCA preservative had been formed. As a result of this exposure, Coffey alleges that he suffered serious health problems. In January 1988, Coffey filed suit against CSI, alleging a number of claims including negligence, breach of warranty and strict liability due to CSI's alleged failure to warn him of the dangers of being exposed to the chemicals.
 
 
 11
 CSI filed a motion for summary judgment asserting that, as a bulk supplier, it had complied with its duty to warn by providing Holly Hill with adequate precautionary information about the chemicals it sold. In support of its motion, CSI submitted the affidavit of H.M. Lupold, the former president and part-owner of Holly Hill, who stated that CSI regularly sent him and supervisory plant personnel Material Safety Data Sheets (MSD Sheets) and other warnings pertaining to the handling of the chemical compounds. J.A. at 232. CSI also submitted deposition testimony from Michael Jordan, CSI's maintenance superintendent, and John Fretti, CSI's technical director, stating that both conveyed these warnings to Holly Hill and its employees. J.A. at 194-98, 209-10.
 
 
 12
 Coffey submitted his own affidavit challenging Lupold's contention that CSI sent MSD Sheets to Holly Hill. Coffey asserted that he was in a position to have seen the MSD Sheets and that since he did not see them, the sheets must have never been transmitted to Holly Hill. J.A. at 294-95. Coffey further stated that while CSI provided warnings regarding the need to wear certain protective gear, he was never warned of the need to wear a dust respirator when working with the chemicals.[1] Coffey asserts that on at least one occasion, CSI employees witnessed him wearing an inadequate paper mask and made no effort to warn him of the need to wear a dust respirator.
 
 
 13
 The lower court granted CSI's motion for summary judgment, concluding that CSI had transmitted the necessary MSD Sheets to Holly Hill despite Coffey's claim that he had never seen them. The court then concluded that a South Carolina court, if faced with the issue, would recognize the bulk supplier defense set forth in Comment "n" of Section 388 of the Restatement (Second) of Torts and would conclude that CSI had satisfied its duty to warn by providing Holly Hill with the MSD Sheets. J.A. at 296.
 
 
 14
 Coffey raises three issues on appeal. First, he asserts that a genuine issue of material fact exists regarding whether or not CSI sent MSD Sheets to Holly Hill. Second, Coffey argues that the court erred in deciding that a South Carolina court would adopt the bulk supplier defense. Third, Coffey contends that even if a South Carolina court would adopt the bulk supplier defense, the district court erred in applying the defense to this case.
 
 III.
 
 15
 Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While the appellate court must draw all reasonable inferences in the light most favorable to the nonmoving party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), the nonmoving party may not create a general issue of material fact based on mere speculation or the building of one inference upon another. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).
 
 
 16
 Coffey contends that there is a genuine issue of material fact as to whether CSI transmitted MSD Sheets to Holly Hill. Coffey claims that as a member of the supervisory plant personnel, he was in a position to have seen the MSD Sheets and that since he did not see them, they must have never been sent to Holly Hill. Coffey maintains that his affidavit directly contradicts the statements made by Lupold, Jordan and Fretti and that the lower court improperly conducted a credibility assessment by favoring their statements and rejecting his affidavit. Coffey also questions the probative value of CSI's evidence in light of his contention that on at least one occasion, CSI employees witnessed him wearing a paper mask when working with the chemicals and made no effort to warn him of the inadequacy of the mask and the need to wear a dust respirator.
 
 
 17
 In opposing CSI's motion for summary judgment, Coffey has undertaken the difficult burden of attempting to prove a negative-that Holly Hill never received MSD Sheets from CSI. As the district court correctly noted, in an effort to prove this negative, Coffey attempts to deny an act to which he was not a party. Lupold, as president of Holly Hill, stated unequivocally that he received MSD Sheets from CSI regularly over the years in question. Jordan and Fretti, two CSI employees, corroborated Lupold's statements and stated that they conveyed both written and oral warnings to Holly Hill employees in the form of MSD Sheets and demonstrations.
 
 
 18
 At best, Coffey's statements establish that he personally did not receive the MSD Sheets which contained information about the chemicals and included recommendations for protective gear (i.e. dust respirators). Coffey's statements are not, however, probative of whether Holly Hill received these warnings from CSI. While Coffey may testify as to whether he received MSD Sheets at Holly Hill, he has failed to establish any foundation to support his bold assertions that no one else (i.e. Lupold) at Holly Hill received MSD Sheets. Coffey's self serving testimony which is utterly lacking in foundation does not establish a genuine issue of material fact. Accordingly, we agree with the district court that no factual issue exists with regard to this matter.[2]
 
 IV.
 
 19
 Pursuant to section 388 of the Restatement (Second) of Torts, a supplier is liable when it: (a) supplies a defective or dangerous product; (b) has no reason to believe that the user will realize its dangerous condition and (c) cannot reasonably rely upon the purchaser/employer to supply the necessary warnings to the ultimate users of the product. See Goodbar v. Whitehead Bros., 591 F. Supp. 552, 556 (W.D. Va. 1984), aff'd sub. nom., Beale v. Hardy, 769 F.2d 213 (4th Cir. 1985). Comment "n" of section 388, which addresses the third factor in this test, recognizes that in certain circumstances, a bulk supplier of a dangerous product may satisfy its reasonable care requirements by notifying the purchaser (Holly Hill) of the dangers of the product rather than directly notifying the ultimate users (Coffey) of the product. Id.; Restatement (Second) of Torts Sec. 388 cmt. n (1965).
 
 
 20
 The Goodbar court listed a number of factors that may be considered before the bulk supplier defense may be invoked. These factors include: (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved and (6) the burdens imposed on the supplier by requiring that it directly warn all users. Goodbar, 591 F. Supp. at 557.
 
 
 21
 While neither the South Carolina legislature nor the South Carolina courts have expressly adopted comment "n" to section 388, we disagree with Coffey that this absence of specific authority presents an impenetrable barrier to our decision on the viability of the bulk supplier defense in this case. The district court, while relying upon "admittedly wavering guidance" from state law, concluded that a South Carolina court facing the issue would recognize the bulk supplier defense. We agree with this assessment.
 
 
 22
 In Livingston v. Noland Corp., 293 S.C. 521, 525, 362 S.E.2d 16, 18 (1987), the Supreme Court of South Carolina implicitly recognized section 388 of the Restatement when it stated:
 
 
 23
 A supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous. Gardner v. Q. H. S., Inc., 448 F.2d 238 (4th Cir. 1971).
 
 
 24
 Id; see also Gardner, 448 F.2d at 242 (applying section 388 in South Carolina case). Given the tacit embracement of the principles of section 388 by the Livingston court, the adoption of comment "n" and the derivative bulk supplier defense logically follows. See Higgins v. E.I. Dupont de Nemours & Co., 671 F. Supp. 1055, 1059, (D. Md. 1987). Other decisions by the Supreme Court of South Carolina, cited by the district court in its opinion, support this conclusion. See Marchant v. Lorain Div. of Koehring, 272 S.C. 243, 251 S.E.2d 189 (1979); Young v. Tide Craft, Inc., 270 S.C. 453, 242 S.E.2d 671 (1978); Marchant v. Mitchell Distributing Co., 270 S.C. 29, 240 S.E.2d 511 (1977). We therefore agree with the district court and conclude that a South Carolina court faced with this issue would recognize the bulk supplier defense.
 
 V.
 
 25
 Having concluded that the bulk supplier defense is available in South Carolina, we must next consider whether the district court erred in its application of the Goodbar factors to the case at hand. In applying the factors, the lower court noted that Holly Hill, by virtue of its receipt of the MSD Sheets and its involvement in a number of trade organizations, was a knowledgeable user of the dangerous chemicals. The court also noted that CSI had no reason to believe that Holly Hill would keep these warnings from its employees and concluded that it would be overly burdensome for CSI to warn each of the ultimate users of the product. With regard to this latter point, the court found:
 
 
 26
 (1) Only Holly Hill would be able to control the chemical containment, training and warning of its employees on a continuing basis;
 
 
 27
 (2) Determining who might be exposed to the chemical products would require constant supervision by a bulk supplier over the purchaser's employees;
 
 
 28
 (3) The customary manner of delivery of the chemicals, i.e. by tanker truck, renders the option of placing warning labels on individual containers unavailable;
 
 
 29
 (4) The practice of storing constituent chemicals in tanks prior to use makes it uncertain that the employees who are present at delivery will be the same ones exposed to the chemical at the time of mixing and/or application to the lumber;
 
 
 30
 (5) Given the turnover of the employees in any sizeable business, only the employer would practically provide for training and warnings for new employees.
 
 
 31
 J.A. at 301.
 
 
 32
 Coffey disagrees with the district court's conclusion and asserts that the bulk supplier defense does not apply to this case since CSI could have taken greater measures to ensure that the ultimate users of the chemicals received warnings. Coffey suggests that CSI could have sent all of its chemicals in bags (containing warning labels) and could have been more involved in warning those Holly Hill employees who would come in contact with the chemicals.
 
 
 33
 Coffey's argument fails to take into account the rationale behind the bulk supplier defense. The bulk supplier defense seeks to balance the dual objectives of facilitating the efficient transportation of goods while at the same time ensuring that the ultimate users of the goods are provided with appropriate information about them. As long as the supplier has provided satisfactory warnings to a reliable intermediary, it has satisfied its obligations and need not take every measure possible to ensure that the intermediary does in fact warn the ultimate user. Thus the inquiry is not, as Coffey suggests, whether the bulk supplier could have done more to ensure that the ultimate users received sufficient warnings; instead, the inquiry is whether the bulk supplier used reasonable care in providing the necessary warnings to a reliable intermediary. We find no error in the lower court's determination that CSI used reasonable care in providing the necessary warnings to Holly Hill.
 
 
 34
 Coffey next asserts that even if the bulk supplier defense defeats his negligent failure to warn claim, his strict liability claim must survive because of the inherent differences between the two claims. In a failure to warn context, we see no significant distinction between a negligence claim and a strict liability claim. See Werner v. Upjohn Co., 628 F.2d 848, 858 (4th Cir. 1980), cert. denied, 449 U.S. 1080 (1981); Higgins, 671 F. Supp. at 1059-1060; W.L. Prosser and W.P. Keaton, Torts Sec. 99 at 697 (5th ed. 1984). We therefore conclude that the bulk supplier defense defeats Coffey's strict liability claim in the same manner it defeats his negligence claim.
 
 VI.
 
 35
 For the reasons stated herein, the decision of the district court is affirmed.
 
 AFFIRMED
 
 36
 WILKINS, Circuit Judge, concurring and dissenting:
 
 
 37
 I agree with the majority that the courts of South Carolina would adopt the bulk supplier defense contained in the Restatement (Second) of Torts Sec. 388 cmt. n (1965). Moreover, I agree that on the evidence presented below, viewed in the light most favorable to Coffey, this defense is applicable as a matter of law. Having concluded that CSI is entitled to raise the bulk supplier defense, however, the dispositive issue becomes whether CSI sent Material Safety Data Sheets (MSD Sheets) to Coffey's employer, Holly Hill. I disagree with the conclusion of the majority that Coffey's affidavit, submitted in opposition to CSI's motion for summary judgment, was insufficient to create a genuine issue of material fact on this question.
 
 
 38
 H. M. Lupold, the President of Holly Hill during the relevant period, swore that CSI transmitted MSD Sheets and periodic changes in safety data to him "and supervisory plant personnel." In addition, Lupold stated in his affidavit that it was his "practice to transmit these to Mr. Coffey in his capacity as Treating Plant Manager for dissemination to other company employees." Coffey, however, swore that he would have known if CSI was periodically sending safety data to Holly Hill and that no MSD Sheets were furnished to Holly Hill or to him during the pertinent period. The majority concludes that Coffey's assertion that Holly Hill did not receive MSD Sheets from CSI is insufficient to raise a genuine issue of material fact on this issue because Coffey did not have personal knowledge of whether Lupold received these materials. I disagree that Coffey's affidavit is insufficient.
 
 
 39
 Viewing the facts in the light most favorable to Coffey, I believe that his position as plant manager removes his assertion that he was in a position to know whether Holly Hill received MSD Sheets from CSI from the realm of "bold assertion" and places it in the realm of reasonable inference. Moreover, the majority would agree that the conflicting evidence from Coffey and Lupold creates a question of fact concerning whether Lupold actually transmitted to Coffey the safety materials that Lupold swore he received. To my mind, this factual dispute raises a question of Lupold's credibility that bears on the central issue of whether Lupold actually received the MSD Sheets purportedly transmitted by CSI.* Indeed, if calling Lupold's credibility into question is insufficient, one is left to wonder what evidence Coffey could present that, in the view of the majority, would be sufficient.
 
 
 40
 Had summary judgment been denied and this litigation allowed to continue, it may well have been resolved in favor of CSI. This result would have been reached because the trier of fact found Lupold, and other defense witnesses, credible and Coffey lacking in this regard. But, issues of credibility are not properly resolved at the summary judgment stage. I, therefore, would reverse the grant of summary judgment in favor of CSI and remand for further proceedings.
 
 
 
 [1]
 Several of the MSD Sheets recommended the use of dust respirators. J.A. at 238, 247
 
 
 [2]
 Coffey filed a motion for reconsideration with the district court in which he attached affidavits from two attorneys who represented him for a related workers' compensation claim. This additional evidence fails to establish a genuine issue of material fact
 
 
 *
 While I do not consider this material in reaching my decision, I note that affidavits of attorneys representing Coffey in his workers' compensation claim, submitted to the district court by Coffey with his motion for reconsideration, further call Lupold's credibility into question. These attorneys swore that during a conference surrounding those proceedings Lupold stated that CSI had not provided him with any information concerning the safety equipment necessary for the proper handling of the chemicals