**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1472**

BEATRICE LOVETT,

        Plaintiff − Appellant,

   v.

CRACKER BARREL OLD COUNTRY STORE, INC.,

        Defendant – Appellee,

   and

C BOCS, INC.; JOHNNI MOORE; CHRIS KOPKA; LISA RICE; GORDON FINCHAM; PRISCILLA MEADOW; KATHY LITTLE,

        Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Terrence W. Boyle, District Judge. (2:14−cv−00034−BO)

Argued: March 22, 2017                       Decided: July 7, 2017

Before KING and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge King and Senior Judge Davis joined.

Ralph Thomas Bryant, Jr., Newport, North Carolina, for Appellant. Christopher Andrew Page, YOUNG, MOORE, AND HENDERSON P.A., Raleigh, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Beatrice Lovett appeals the district court's order granting summary judgment in favor of her employer, Cracker Barrel Old Country Store, Inc., on her claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), as amended, and 42 U.S.C. § 1981. Because Lovett's evidence does not create a genuine dispute as to whether retaliation, rather than a legitimate non-retaliatory reason, was the justification for Cracker Barrel's adverse employment action against her, we affirm.

I.

A.

In August 2012, Cracker Barrel hired Lovett, an African-American woman, as a Retail Shift Leader trainee in North Carolina. Lisa Rice, a Retail District Manager for Cracker Barrel, hired Lovett specifically for the Shift Leader program, which allows trained retail employees to serve in temporary leadership roles when a store's manager is absent. Before becoming a Retail Shift Leader, a trainee must progress through the company's Personal Achievement Responsibility ("PAR") training program. After she was hired, Lovett began the training program.

In the fall of 2012, a white female named Donna Kelly temporarily became Lovett's direct supervisor. According to Lovett, Kelly stopped training her and began training another employee, Katherine Little, who was also a white female. Lovett claimed that Little made derogatory statements toward Lovett and that Kelly discriminated against Lovett at work, all because of Lovett's race. After initially

3

complaining to Rice, Lovett filed a formal complaint in early 2013 with the company's "Open Door" hotline. The employee assigned to investigate the complaint, Angela Brown, ultimately determined that Lovett's allegations against Little and Kelly were meritless.

In February 2013, another white female named Johnni Moore became Lovett's new permanent supervisor. Moore also refused to train Lovett as a Shift Leader. Lovett then filed a second complaint through the Open Door hotline about Moore's and Rice's treatment of her. The employee assigned to investigate the complaint, Karen Johnston, interviewed both Moore and Rice, who explained that they had chosen another employee—an African-American woman named Rita Rahman—to become Shift Leader instead of Lovett. Moore and Rice justified their decision in part by referring to Rahman's longer tenure with the company and her completion of the PAR training program. Ultimately, Johnston determined that Lovett's complaint was meritless.

On September 12, 2013, Lovett filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). On September 30, Lovett updated her employee availability forms, notifying Cracker Barrel that she could no longer work on Saturdays. Lovett alleges that Moore subjected her to discriminatory treatment and racist statements in retaliation for filing the EEOC charge. In particular, Lovett alleges Moore told her that "[p]eople who go to the EEOC don't get work around here anymore." J.A. 57. Between this time and March 2014, Moore also assigned Lovett fewer hours to work, moving her from 20.4 hours to 16.2 hours per week on average.

4

On March 23, 2014, Lovett submitted another form removing weekends from her availability. On March 24, the EEOC notified Lovett that it was unable to conclude that Cracker Barrel violated the law in its treatment of her. During the same week, Moore cut Lovett's hours further, citing Lovett's reduced availability as the reason for the hours-reduction. On March 31, Brown wrote to Lovett reiterating her conclusion that Lovett had not been discriminated against on the basis of her race, noting Lovett's "restricted availability" to work at Cracker Barrel, and explaining that it was "imperative to the successful operation of the store" that Lovett "be able to work the hours necessitated by Cracker Barrel's business needs." J.A. 181.

In April 2014, Moore removed Lovett from the schedule. Moore claims that she met with Lovett on April 22 to discuss Lovett's restricted availability. According to Moore, she told Lovett at this meeting that Cracker Barrel needed to schedule weekday shifts for employees who also worked the busier weekend shifts, to ensure that these employees were treated fairly. Moore also claims she told Lovett that she would put Lovett back on the schedule if Lovett made herself available to work on weekends. Lovett denies that this meeting ever occurred. Ultimately, Lovett did not add a consistent weekend shift to her availability and remained almost entirely off the schedule.

B.

On June 19, 2014, Lovett filed a complaint against Cracker Barrel. Her second amended complaint, filed in September 2015, alleged that Cracker Barrel intentionally discriminated against her because of her race and reduced her hours in retaliation for

5

filing an EEOC charge complaining about the discrimination, all in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

The district court granted summary judgment to Cracker Barrel on both claims. On Lovett's racial discrimination claim, the court found that Lovett had failed to establish a prima facie case, or to rebut Cracker Barrel's proffered nondiscriminatory reason for not continuing to train Lovett for the Shift Leader position. As for Lovett's retaliation claim, the district court found that Lovett had failed to create a genuine dispute as to whether Cracker Barrel's non-retaliatory justification for reducing Lovett's work hours— her restricted availability—was merely a pretext. Lovett filed a timely appeal, challenging only the district court's dismissal of her retaliation claim.

II.

A.

We review a district court's grant of summary judgment de novo, viewing the facts and reasonable inferences in a light most favorable to the non-moving party. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party bears the ultimate burden of establishing specific material facts in dispute. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). In meeting this burden, the non-moving party cannot rely on conclusory or speculative statements based on "[a] mere scintilla of evidence . . . . Rather, the evidence must be such that the jury reasonably

6

could find for the nonmoving party." *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999) (internal quotation marks omitted).

## B.

Applying this standard, we find that Lovett's evidence would not allow a rational jury to rule in her favor on the retaliation claim because it doesn't create a genuine dispute over whether retaliation—rather than Lovett's restricted availability—was the real reason behind the reduction in Lovett's hours. We therefore affirm the district court's decision to grant summary judgment in Cracker Barrel's favor.

We first review the legal framework governing retaliation claims. Title VII prohibits employers from "discriminat[ing] against any of [their] employees . . . because [the employees] opposed any practice made an unlawful employment practice by this subchapter, or because [they] . . . participated in any manner in an investigation." 42 U.S.C. § 2000e-3(a). A successful Title VII retaliation claim has three elements: (1) engagement in protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Navy Fed.*, 424 F.3d at 406. Similar standards are used to evaluate a retaliation claim under 42 U.S.C. § 1981. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271–72 (4th Cir. 2015) (en banc).

Once a plaintiff establishes a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Navy Fed.*, 424 F.3d at 407. "If the defendant carries this burden, the presumption of retaliation falls, and the plaintiff bears the ultimate burden of proving

that the defendant's non-retaliatory reason for the adverse employment action was pretextual." *Id.* In meeting this ultimate burden, the plaintiff must show "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (alterations in original) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

In this case, the district court concluded that Lovett had established a prima facie case of retaliation, but also found that Cracker Barrel had shown a legitimate and non-retaliatory reason for reducing Lovett's hours. The court then found that the primary evidence Lovett offered in response, demonstrating that this non-retaliatory reason was a pretext, was "her own, self-serving declaration." J.A. 467. The district court thus granted summary judgment to Cracker Barrel, finding that Lovett had not met her burden of showing that Cracker Barrel's non-retaliatory reason was pretextual.

On appeal, the parties dispute whether Lovett's affidavit, which alleges that Cracker Barrel's "availability" reason was a pretext, is enough to allow her retaliation claim to survive summary judgment. Cracker Barrel argues that as a matter of law, "self-serving affidavits of non-movants" that are "unsupported by objective record evidence" are insufficient to create genuine issues of material fact, and thus cannot help the non-movant defeat a summary judgment motion. Appellee's Br. at 21–22. But courts have "long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'" *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Rather, if such

8

an affidavit is "based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts." *Id.*

The key question remains whether the non-movant has produced enough evidence to demonstrate that a "dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Sometimes, the non-movant's affidavit will be insufficient to meet this standard, and other times it will be enough. *Compare Coffey v. Chem. Specialties, Inc.*, No. 92-2397, 1993 WL 318886 at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact), *with Harris v. Mayor & City Council of Balt.*, 429 F. App'x 195, 198 n.5, 203 (4th Cir. 2011) (concluding that summary judgment was inappropriate, in part because of evidence from non-movant's affidavit).

Therefore, the evidence Lovett offers must, when viewed in her favor, create a genuine dispute about whether Cracker Barrel's purported reason for reducing her hours is false, and whether retaliation was the real reason behind its actions. *See Foster*, 787 F.3d at 252. This it fails to do.

Lovett's strongest evidence is her affidavit and a transcript of a March 2014 voice message she left on Rice's phone. In her affidavit, Lovett claims that during late 2013, Moore made numerous racist statements and told her that "people who go to the EEOC don't get work around here anymore." J.A. 424. Lovett also says that Moore used Lovett's updated availability form, which she submitted on March 23, 2014, as a pretext

for reducing her hours.  To support this claim, Lovett points to a voice mail she left on Rice's phone in late March 2014.  In the message, Lovett says:

> [Moore] makes it very clear she doesn't need me for anything. . . .  [S]he doesn't have hours for me.  I've never unloaded a truck or . . . done a floor move under her.  A lot of the paperwork I don't see.  She prefers that I don't know. . . .  You know, I just don't understand why, but um I've told her that if she only has 10 or 12 hours for me then I am gonna have to shorten my availability.  So this week, she's been . . . [asking me] when are you gonna put in your availability . . . *so she can justify shortening my hours*.

J.A. 426.  Lovett also references a statement Moore made in a March 15 email to Rice and Brown, where Moore said that while "[Lovett] is a good sales associate . . . [she] has made so many accusations about managers and her fellow employees that the management staff at this store feels that it is best not to let her spread this poisonous attitude to other areas of the store."  J.A. 443.  In that same email, Moore also stated that "[Lovett cannot] work in retail without causing mounds of paperwork to be created by multiple people addressing her concerns (that have found to be without merit)."  J.A. 443.

But this evidence, even when viewed in the light most favorable to Lovett, isn't enough to create the genuine dispute of fact necessary to Lovett's case.  First, the hourly records, availability forms, and Lovett's own affidavit demonstrate that Moore didn't significantly cut back on Lovett's hours until after Lovett reduced her availability, *both* in September 2013 *and* in March 2014.  On September 30, 2013, Lovett told Cracker Barrel that she wasn't able to work Saturdays, and Moore reduced her hours accordingly.  This all occurred roughly six months before Lovett complained to Rice about Moore's

10

allegedly retaliatory behavior, and before Moore expressed complaints about the amount of "paperwork" that Lovett's complaints caused.

Second, Cracker Barrel repeatedly emphasized to Lovett that her availability was an important factor in receiving hours. Lovett doesn't contest that Brown sent her a letter in late March 2014 explaining that it was "imperative" that she offer availability consistent with the company's needs (which were weighted towards the weekends). J.A. 181. Nor does Lovett contest that after she reduced her availability in September 2013, Rice explained to her that Moore was required to schedule employees based on the needs of the company, and that if Lovett wanted additional hours, she needed to make herself available to work the busier weekend shifts.* Instead, Lovett reduced her availability further in March 2014, leading to a further reduction in her hours.

Overall, the evidence severely undermines Lovett's claim of a link between her engaging in a protected activity and her employer's adverse action. As a result, Lovett fails to rebut Cracker Barrel's proffered legitimate, non-retaliatory reason for the action.

Finally, Lovett argues that the district court improperly weighed the evidence and made credibility determinations in reaching its decision. *See* Appellant's Br. at 13, 18 (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562 (4th Cir. 2015)). In *Jacobs*, an employee alleged that she had been fired because of her disability. 780 F.3d

---

\* The parties dispute whether Moore also met with Lovett in April 2014, where Moore explained to Lovett that she needed to offer consistent weekend availability in order to receive hours. Lovett claims this meeting never occurred, and we assume for the purpose of summary judgment that she is correct.

11

at 565.  We reversed the district court's grant of summary judgment to an employer in part because the employer's asserted reason for firing the employee found little support in, and was sometimes contradicted by, the record.  *See id.* at 576.  The district court had overlooked those contradictions, and thus effectively viewed the evidence in the employer's favor.  *Id.* at 576–77.

Here, unlike the situation in *Jacobs*, Cracker Barrel's asserted justification for reducing Lovett's hours finds strong support in the record, and is corroborated by the temporal relationship between Lovett's repeated decisions to reduce her weekend availability and the company's subsequent decisions to reduce her hours.  Even in the light most favorable to the plaintiff, Lovett's evidence wouldn't allow a reasonable jury to rule in her favor.

*AFFIRMED*