IN THE UNITED STATES DISTRICT COURT 
 FOR THE DISTRICT OF MARYLAND 

YOGESH MEHTA, ET AL., * 

 Plaintiffs, * 
v. 
 * Civil Case No: 1:23-cv-02698-JMC 
MUTUAL BENEFIT INSURANCE 
COMPANY, * 

 Defendant. 
 * 

* * * * * * * * * * * * * * 
 MEMORANDUM OPINION AND ORDER 
 Plaintiffs, Yogesh and Chetna Mehta, filed the present lawsuit on August 8, 2023, against 
Defendant, Mutual Benefit Insurance Company, in the Circuit Court for Baltimore County, 
Maryland, seeking declaratory judgment and alleging breach of contract. (ECF No. 2). Defendant 
then removed the case to this Court on October 5, 2023. (ECF Nos. 1, 7). Before the Court is 
Defendant’s Motion for Summary Judgment. (ECF No. 30). The motion is fully briefed (ECF 
Nos. 31, 32) and no hearing is necessary. See Loc. R. 105.6 (D. Md. 2023). For the reasons 
explained below, Defendant’s motion will be denied. 
I. BACKGROUND 
 At all times relevant to this lawsuit, Plaintiffs owned a residence in Maryland insured by 
Defendant through its homeowner’s policy HO00266198 (the “Policy”). (ECF No. 30-1 at 1; ECF 
No. 31-1 at 1; ECF No. 30-3 at 4).1 Plaintiffs traveled to India from roughly September 7, 2022, 
to January 18, 2023. (ECF No. 31-6 at 4–5). Plaintiff Mr. Mehta’s sister, Manisha Bhatt, checked 
in on Plaintiffs’ residence “whenever she had time” while Plaintiffs were out of the country. Id. 
at 5–6. Two days prior to Plaintiffs’ trip, Plaintiffs supposedly set the thermostat “on 70 for air 

condition and 60 on heating” through an internet application that allowed them to pre-set their 
thermostat for the dates that they were out of the home. Id. at 6, 9. “But when [they] left, internet 
was disconnected. So [they] could not do it on the phone” while away if needed. Id. at 9. 
 According to Ms. Bhatt’s deposition testimony, Ms. Bhatt discovered flooding at Plaintiffs’ 
residence on roughly January 2, 2023, when she “tried to open the door” for one of her random 
wellness checks. (ECF No. 31-7 at 5). The flooding prevented Ms. Bhatt from entering through 
the front door “And then – because of that ceilings and all that had come down.” Id. at 6. Ms. 
Bhatt immediately telephoned Plaintiffs’ son, Anand Mehta, to inform Anand of the situation while 
the water continued to flood through Plaintiffs’ home. Id.2 Ms. Bhatt and Anand proceeded to 

call the fire department, which cut off the water to Plaintiffs’ residence to stop the flooding. Id. 
Upon briefly inspecting the residence after the water was shut off, Ms. Bhatt noticed that at least 
part of the ceiling “was down” and that there was “plenty damage” to Plaintiffs’ furniture. Id. at 
7–8. Anand subsequently informed Plaintiffs of the flooding on January 2, 2023, before becoming 
heavily involved in cleaning Plaintiffs’ residence prior to their return home. (ECF No. 31-6 at 5; 

1 When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers 
provided in the electronic filing stamps located at the top of every electronically filed document. 

2 The Court refers to Anand Mehta as “Anand” throughout this Memorandum Opinion and Order solely as to avoid 
any confusion with reference to Plaintiff Mr. Yogesh Mehta. 
ECF No. 31-7 at 6–7, 9). Plaintiff Mr. Mehta declared as of February 22, 2023, that the house was 
“Not liveable” because all but one bedroom, the living room, dining room, family room, and the 
full basement were damaged by the flooding, necessitating that Plaintiffs temporarily relocate to 
an apartment in Towson, Maryland. (ECF No. 31-6 at 4, 9–10). 
 Plaintiffs’ son contacted David Yates of Yates Consulting, “a plumbing/heating/air 

conditioning” business, to “take a look at the problem that his parents were having.” (ECF No. 
31-11 at 4). Mr. Yates visited the property on roughly March 4, 2023. Id. at 7–8. Mr. Yates 
described his initial inspection of the property as follows: 
 The first thing that I look[ed] for was freeze damage in the piping and I found none 
 whatsoever. And then the second place I looked was a kitchen sink which was on 
 an outside wall and that’s typically where we first see freeze damage in a home 
 that’s been subject to freezing, and there was no damage under there. The piping 
 was – obviously had not been touched, tampered or repaired. It looked to be the 
 original piping. 

Id. Mr. Yates then observed that a faucet in the guest bathroom on the second floor “was obviously 
broken” because “the hot side stem had separated from the faucet.” Id. He also noted that, 
regarding the shower faucet in Plaintiffs’ master bedroom, “the stem for the isolation valve had 
pushed through the retainer clip and so there were two leaks. There was one there at the master 
bath/shower and one at the vanity.” Id. Mr. Yates proceeded to inspect the basement vanity, where 
he did not observe any freeze damage. Id. He then “went on to test the water heater and the water 
pressure in the house to try and determine what may have occurred that could cause that kind of 
damage in the upper floor bathrooms.” Id. With reference to local weather reports throughout 
December 2022 and his own inspection, Mr. Yates further opined that: 
 [I]n this case we didn’t have that solid set of bitter cold weather that would lead me 
 to conclude that the house actually froze up. And the fact that those fixtures were 
 on inside walls also indicated to me that the house did not freeze, that there was a 
 – rather that there was a pressure issue . . . I think what happened is somewhere in 
 that main [water] line an ice plug formed and that would have isolated – would have 
 effectively isolated the hot side from the rest of the system . . . An ice plug, as it 
 forms and freezes and works its way out and expands, can generate several 
 thousand psi of pressure which is enough to split copper or push fittings apart. And 
 I suspect that what happened in this case it [the ice plug] pushed the hot stem out 
 of the master bath/shower and also the stem off of the lavatory faucet in the guest 
 bedroom . . . And the other thing that’s interesting is when this does happen, and I 
 have seen it happen in quite a few homes, no leaks show up until the warmer 
 weather arrives and that ice plug thaws. And as soon as the ice plug thaws, then 
 you have water spewing forth from wherever the damage occurred. 

Id. at 9, 11. Mr. Yates clarified that the ice plug likely formed when cold air entered Plaintiffs’ 
residence during a cold night in December 2022. Id. at 10. 
 Plaintiffs subsequently initiated a claim with Defendant regarding the damage to their 
home. Although it is not entirely clear from the present motion when this occurred, Plaintiffs 
asserted in their written discovery responses that Anand telephoned Defendant on January 2, 2023, 
(the day that Ms. Bhatt discovered the damage) to start the “claim process on the home.” (ECF 
No. 31-5 at 11). Defendant eventually disavowed coverage for Plaintiffs’ claimed damages on 
June 7, 2023, on the ground that: 
 You went on a vacation abroad beginning in September 2022. You had a family 
 member, [Ms. Bhatt], checking in on the Property regularly. Energy utility records 
 from Baltimore Gas & Electric (‘BGE’) show no use of gas whatsoever for the time 
 period when you were abroad. Daily utility records from BGE indicate that use of 
 gas in the residence resumed only shortly after the loss was discovered. The water 
 damage at issue in this claim was caused by the failure of two separate bathroom 
 fixtures on the second floor. The fixtures separated due to freezing. The damage 
 done to the Property was consistent with the Property not having been heated. 

(ECF No. 31-3 at 2). Plaintiffs then filed the present lawsuit in August 2023 before Defendant 
removed it to this Court in October 2023. (ECF Nos. 1, 2). 
II. STANDARD OF REVIEW 
 Federal Rule of Civil Procedure 56(a) requires the Court to “grant summary judgment if 
the movant shows that there is no genuine dispute as to any material fact and the movant is entitled 
to judgment as a matter of law.” A dispute as to a material fact “is genuine if the evidence is such 
that a reasonable jury could return a verdict for the nonmoving party.” J.E. Dunn Const. Co. v. 

S.R.P. Dev. Ltd. P’ship, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting Anderson v. Liberty 
Lobby, Inc., 477 U.S. 242, 248 (1986)). A nonmoving party “opposing a properly supported 
motion for summary judgment ‘may not rest upon the mere allegations or denials of [his] 
pleadings,’ but rather must ‘set forth specific facts showing that there is a genuine issue for trial.’” 
Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. 
Civ. P. 56(e)). 
 The Court is “required to view the facts and draw reasonable inferences in the light most 
favorable to” the nonmoving party. Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (citing Scott 
v. Harris, 550 U.S. 372, 377 (2007)). However, the Court must also “abide by the ‘affirmative 

obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding 
to trial.’” Heckman v. Ryder Truck Rental, Inc., 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) 
(quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot 
create a genuine dispute of material fact through mere speculation or compilation of inferences. 
See Deans v. CSX Transp., Inc., 152 F.3d 326, 330–31 (4th Cir. 1998). 
III. DISCUSSION 
 Defendant argues that it is entitled to summary judgment because Plaintiffs, as a matter of 
law, failed to take “reasonable steps” to “maintain heat” while they were out of the country, 
resulting in a non-covered peril under the Policy. (ECF No. 30-1 at 6–10). “Our primary task in 
interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself.” 

Cole v. State Farm Mut. Ins. Co., 359 Md. 298, 305 (2000). “We look first to the contract language 
employed by the parties to determine the scope and limitations of the insurance coverage.” Id. 
(citing Chantel Assoc. v. Mount Vernon Fire Ins. Co., 338 Md. 131 (1995)). In pertinent part, the 
Policy here provides that: 
 Coverage C - Personal Property 
 We insure for direct physical loss to the property described in Coverage C caused 
 by any of the following perils unless the loss is excluded in Section I – 
 Exclusions . . . 

14. Freezing 
 a. This peril means freezing of a plumbing, heating, air conditioning or automatic 
 fire protective sprinkler system or of a household appliance, but only if you have 
 used reasonable care to: 
 (1) Maintain heat in the building; or 
 (2) Shut off the water supply and drain all systems and appliances of water. 
 However, if the building is protected by an automatic fire protective sprinkler 
 system, you must use reasonable care to continue the water supply and maintain 
 heat in the building for coverage to apply. 
 b. In this peril, a plumbing system or household appliance does not include a sump, 
 sump pump or related equipment or a roof drain, gutter, downspout or similar 
 fixtures or equipment. 

 * * * 

 We do not insure, however, for loss: 

 c. Caused by: 
 (1) Freezing of a plumbing, heating, air condition or automatic fire 
 protective sprinkler system or of a household appliance, or by discharge, 
 leakage or overflow from within the system or appliance caused by freezing. 
 This provision does not apply if you have used reasonable care to: 
 (a) Maintain heat in the building; or 
 (b) Shut off the water supply and drain all systems and appliances of 
 water. 
(ECF No. 30-4 at 3–4).3 
 “When ‘determining whether an action is covered within the scope of an insurance policy,’ 
Maryland courts employ a ‘three-part burden-shifting scheme[.]’” Nautilus Ins. Co. v. 200 W. 
Cherry St., LLC, 383 F. Supp. 3d 494, 512 (D. Md. 2019) (quoting CX Reinsurance Co. Ltd. v. 
Camden Mgmt. Servs., LLC, No. WMN-14-180, 2014 WL 5510914, at *3 (D. Md. Oct. 30, 2014)). 
“First, the burden of proving entitlement to insurance benefits lies with the insured. Second, the 
insurer must demonstrate that the policy excludes coverage of the claim. Third, if the insurance 
company prevails in showing that the claim is excluded, the insured must prove the applicability 
of an exception to the exclusion.” Id. (internal quotations and citations omitted). 

 Defendant’s sole argument in support of summary judgment in its favor is that Plaintiffs’ 
damages resulting from freezing pipes is plainly not covered under the Policy unless Plaintiffs 
took reasonable care to maintain heat in their home, which Plaintiffs failed to do as a matter of 
law. More specifically, Defendant contends that Plaintiffs’ uncorroborated, self-serving testimony 
regarding the steps they took to maintain heat in their home is insufficient to overcome 
documentary evidence from BGE that little to no natural gas was used in Plaintiffs’ residence from 
December 14, 2022, through January 2, 2023, which is within the time frame that both parties 
agree the damages occurred. Plaintiffs “agree that there was a ‘freeze’ event of some type and that 
there was corresponding loss” and that Defendant “has denied coverage based on an exclusion to 
coverage.” (ECF No. 31-1 at 5). However, Plaintiffs counter that summary judgment is improper 

3 It appears from the evidence submitted in connection with this motion that both parties attached only endorsements 
to the Policy, which modified the Policy, rather than the underlying Policy itself in support of their respective positions. 
See (ECF No. 30-3; ECF No. 31-2). Regardless, the above contractual language is derived from that included in 
Defendant’s reservation of rights letter that was sent to Plaintiffs on January 20, 2023, (attached as exhibit 2 to 
Defendant’s motion) and Plaintiffs do not contest that the above contractual language is inaccurate or otherwise 
indicate that the Policy does not contain the above provisions. Further, Plaintiffs assert in their opposition that such 
language is accurate. (ECF No. 31-1 at 4). 
because “[1] The parties disagree on the precise nature and cause of the loss, [2] whether the heat 
was on, [3] whether the heat was working, [4] whether there was a widespread ‘whole house’ or 
an isolated limited freeze event occurring . . . and, [5] if the [Plaintiffs] complied with their policy 
by employing ‘reasonable care’ to maintain heat while they were away.” Id. Plaintiffs even go as 
far as urging the Court to enter partial summary judgment in their favor because they exercised 

reasonable care as a matter of law. 
 Plaintiffs’ reliance on the first and fourth assertions is misplaced. Plaintiffs’ concession 
that their residence was damaged by a “freeze event” in their plumbing/water pipes implicates the 
above contractual provisions. Regardless of the source of the freeze event or the exact science 
behind that event, there is no genuine dispute that Plaintiffs’ residence was damaged by the type 
of freezing contemplated by the Policy. The issue then becomes whether there exists a genuine 
dispute of material fact regarding whether Plaintiffs used reasonable care to maintain heat in their 
residence leading up to that event. 
 As a preliminary matter, Plaintiffs contend that “There appears to be a dearth of Maryland 

cases directly on point” for the proposition that “cases involving reasonable care/reasonable person 
standard are instructive in determining if summary judgment is appropriate here, and that the 
reasonableness of their actions should be left to a reasonable jury,” yet Plaintiffs provide no citation 
to any such Maryland authority in this context specifically. (ECF No. 31-1 at 9, 9 n.5). 
Nevertheless, Plaintiffs do provide ample authority supporting the general proposition that 
“reasonableness” is often a question of fact to be determined by a jury. See, e.g., Hana Fin., Inc. 
v. Hana Bank, 574 U.S. 418, 422 (2015) (observing that “Indeed, [the Supreme Court] has long 
recognized across a variety of doctrinal contexts that, when the relevant question is how an 
ordinary person or community would make an assessment, the jury is generally the decisionmaker 
that ought to provide the fact-intensive answer” and collecting cases); see also TSC Indus., Inc. v. 
Northway, Inc., 426 U.S. 438, 450 n.12 (1976) (“In an analogous context, the jury’s unique 
competence in applying the ‘reasonable man’ standard is thought ordinarily to preclude summary 
judgment in negligence cases.”). This is bolstered by Maryland law indicating that issues of 
reasonableness and exercising due care are ordinarily jury issues in other contexts, such as claims 

of negligence and contributory negligence. See, e.g., Woolridge v. Abrishami, 233 Md. App. 278, 
302–03 (2017); Polakoff v. Turner, 385 Md. 467, 478–80 (2005). 
 The parties also express some conflicting views on who carries which burden(s) in this 
case. See (ECF No. 31-1 at 13–15; ECF No. 32 at 3–5). To be clear, the Policy provides coverage 
for damages from freezing if Plaintiffs exercised reasonable care in maintaining heat in their home. 
Under the above three-part framework, it is therefore Plaintiffs’ burden to demonstrate that they 
did, in fact, exercise reasonable care to maintain heat, but that doing so nevertheless resulted in 
damages from freezing that are covered as physical losses under the Policy. The burden then shifts 
to Defendant to demonstrate that an exclusion to this principle applies, namely that Plaintiffs failed 

to exercise reasonable care in maintaining heat in their home. 
 Here, there exists a genuine dispute of material fact regarding whether Plaintiffs exercised 
reasonable care in maintaining heat in their home. Plaintiffs testified during their joint deposition 
that they attempted to take reasonable measures to keep their home heated while away by pre-
setting the thermostat and seeking Ms. Bhatt’s assistance in monitoring the home during their 
absence. Ms. Bhatt also asserted in her deposition that she never had to adjust the thermostat 
during her visits and that she never observed anything out of the ordinary at the home during her 
visits, which would presumably include noticing whether Plaintiffs’ residence was particularly 
cold (or warm). (ECF No. 31-6 at 6; ECF No. 31-7 at 7). Ms. Bhatt further indicated to SEA, 
Ltd., a forensic engineering service hired by Defendant to investigate Plaintiffs’ claim, that “she 
thought that the inside of the house felt like it was heated during her visits.” (ECF No. 31-13 at 
11). 
 Defendant rebuts that this self-serving testimony is insufficient to survive summary 
judgment because BGE records indicate little to no natural gas was used in Plaintiffs’ home while 

they were away, constituting “contradictory documentary evidence” overriding Plaintiffs’ 
assertions. (ECF No. 30-1 at 7). “[C]ourts have ‘long ago buried—or at least tried to bury—the 
misconception that uncorroborated testimony from the non-movant cannot prevent summary 
judgment because it is ‘self-serving.’” Lovett v. Cracker Barrel Old Country Store, Inc., 700 F. 
App’x 209, 212 (4th Cir. 2017) (quoting Berry v. Chi. Trans. Auth., 618 F.3d 688, 691 (7th Cir. 
2010)). “Rather, if such an affidavit is based on personal knowledge or firsthand experience, such 
testimony can be evidence of disputed material facts.” Id. (quotation omitted); see also Allegis 
Grp., Inc. v. Bero, No. CV ELH-22-686, 2023 WL 5989438, at *20 (D. Md. Sept. 1, 2023) (“But, 
if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed 

material facts, even if it is uncorroborated and self-serving.”) (citing Lovett, 700 F. App’x at 212). 
As Defendant highlights, though, “testimony can and should be rejected without a trial if, in the 
circumstances, no reasonable person would believe it.” Church v. Maryland, 180 F. Supp. 2d 708, 
741 (D. Md. 2002), aff’d, 53 F. App’x 673 (4th Cir. 2002) (emphasis added) (quotation omitted); 
see also id. (citing Respect, Inc. v. Committee on the Status of Women, 781 F. Supp. 1358, 1367 
(N.D. Ill. 1992), for the proposition that “even on summary judgment the district court should not 
credit testimony that is inherently incredible . . . a standard met where, as here, the nonmoving 
party’s story is irrefutably contradicted by documentary evidence”) (emphasis added). 
 The Court is unable to conclude at this time that no reasonable person would believe 
Plaintiffs’ (and Ms. Bhatt’s) firsthand testimony or that the BGE records irrefutably contradict as 
much. Defendant admits in its motion that “the [BGE] representative and BGE would not 
definitively say that there was absolutely zero [natural gas] usage whatsoever.” (ECF No. 30-1 at 
9); Def.’s Mot. For Summ. J., Ex. 8, Dep. of Jessica Gump, at p. 22. Additionally, Mr. Yates 

opined that it was plausible that either (1) the gas usage was zero because the thermostat did not 
need to activate given the “warm weather that we had in 2022 of December”; or (2) the gas usage 
may not have raised to a detectable level in the BGE reports if it ran for a period of time 
insufficiently long to generate a “therm.” (ECF No. 31-11 at 13).4 Mr. Yates also opined that he 
“would expect to see more damage” if the heat in Plaintiffs’ residence was completely off leading 
up to the freezing and flooding. Id. It is also worth noting that neither party sets forth a definition 
under the Policy of what constitutes “reasonable care,” leaving such language open to varying 
interpretations that the Court cannot surmise at this stage, particularly in light of the above 
conflicting record evidence. Accordingly, the Court cannot definitively state as a matter of law 

that Plaintiffs failed to take reasonable measures to maintain heat in their home, which led to the 
flooding and precludes Plaintiffs from seeking coverage under the Policy given the facts of this 
case. Summary judgment in favor of Defendant is therefore inappropriate on this issue. Likewise, 
nor can the Court conclude as a matter of law that Plaintiffs did exercise reasonable care in 
maintaining heat in their home while out of the country. 

4 See Therm, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/therm (last visited June 26, 
2024) (defining “therm” as “a unit for quantity of heat that equals 100,000 British thermal units”). 
IV. CONCLUSION 
 For the foregoing reasons, Defendant’s Motion for Summary Judgment (ECF No. 30) is 
DENIED and Plaintiffs’ cross-request for summary judgment in their opposition (ECF No. 31) is 
DENIED. The parties shall prepare diligently for their upcoming settlement conference with 
Judge Aslan which is currently scheduled for August 13, 2024. (ECF No. 29). In the event that 

the parties are unable to resolve this matter during that mediation, the parties shall promptly inform 
the undersigned via a joint correspondence or status report indicating as such. The Court will then 
continue with trial scheduling if needed. 

Date: June 27, 2024 /s/ __ 
 J. Mark Coulson 
 United States Magistrate Judge